**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

PENN-AMERICA INS. CO.,                     :
                                           :
    Plaintiff,                           :
                                           :
v.                                         :     CASE NO.: 7:25-CV-171 (WLS)
                                           :
BAYTREE PIER, LLC d/b/a THE                :
PIER BAR, *et al.*,                        :
                                           :
    Defendants.                          :
                                           :

## ORDER

Before the Court is Plaintiff Penn-America Insurance Company's ("Penn-America") Motion for Judgment on the Pleadings (Doc. 14). Therein, Penn-America claims that it is entitled to judgment on the pleadings that it does not owe coverage, including a duty to defend, to Defendant Baytree Pier, LLC d/b/a The Pier Bar or Paul Wilson for claims asserted in a liability lawsuit by Defendants Justin Long and Brandi Spinks. For the reasons discussed below, Penn-America's Motion is **GRANTED**.

## I.    RELEVANT BACKGROUND

This case arises from a lawsuit filed by Defendants Justin Long and Brandi Spinks (collectively, "Underlying Plaintiffs") in the State Court of Lowndes County, Georgia, against Defendants Baytree Pier, LLC d/b/a The Pier Bar and Paul Wilson (collectively, "the Pier Defendants"). (Doc. 1 ¶ 8); (Doc. 1-4). The Pier Bar is a limited liability company—whose member is Paul Wilson—that operates a bar in Remerton, Georgia. (Doc. 1 ¶¶ 2, 9). The Underlying Plaintiffs complaint (Doc. 1-4) ("underlying complaint") alleges that on October 29, 2023, their daughter Brianna Long was finishing her bartending shift at The Pier Bar when she was "struck by a stray bullet" originating from an altercation in the parking lot that erupted into gunfire. (Doc. 1 ¶ 10 (quoting Doc. 1-4 ¶ 9)). Long later died from her injuries. (*Id.*) The Underlying Plaintiffs assert a single negligence claim against the Pier Defendants, alleging that they "breached [their] duty [to Long] by failing to exercise ordinary care to keep the premises and approaches safe." (*Id.* ¶ 11 (citing Doc. 1-4 ¶ 17)). They also allege the Pier Defendants

1

had "actual and/or constructive knowledge of frequent violent and criminal activity on or around the property[,]" and that the Pier Defendants' negligent conduct was "a direct and proximate" cause of Long's death. (*Id.* ¶ 12 (quoting Doc. 1-4 ¶ 17–18)).

Penn-America initiated the instant lawsuit on November 21, 2025, by filing a Complaint for Declaratory Relief (Doc. 1). Penn-America, an insurance company, issued a commercial general liability policy ("the policy") to the Pier Defendants for the period February 19, 2023, to February 19, 2024. (*Id.* ¶ 16). Penn-America seeks a declaration that it does not owe coverage, including a duty to defend, to the Pier Defendants for the claims asserted against them by the Underlying Plaintiffs under the terms and exclusions of the policy. (*See generally id.*)

Penn-America filed the instant Motion for Judgment on the Pleadings (Doc. 14) on January 28, 2026, after the Underlying Plaintiffs and the Pier Defendants filed their respective Answers (Docs. 6 & 11). Both the Pier Defendants and the Underlying Plaintiffs sought and were granted an extension to file their respective responses to the motion under Local Rule 6.2.[1] (*See* Docs. 15 & 16). The Underlying Plaintiffs' response deadline was extended through March 4, 2026, and their response (Doc. 19) was timely filed on that date.[2] The Pier Defendants' deadline was extended through March 3, 2026. To date, the Pier Defendants have not filed a response to Penn-America's motion, and their deadline to do so has long since expired. As such, the Motion is ripe for review.

## II.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion "provides a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the competing pleadings . . . ." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quotation marks omitted).

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss. *Carbone v. Cable News Network, Inc.*, 910

---

[1] In civil cases, the clerk of the court and his deputies are authorized to permit extensions of time to a date certain not to exceed fourteen (14) days for the filing of briefs. M.D. Ga. L.R. 6.2.

[2] In their response, the Underlying Plaintiffs state that they take no position regarding whether coverage exists as they are not the insureds under the subject policy. (Doc. 19 ¶ 3–4).

2

F.3d 1345, 1350 (11th Cir. 2018). "In determining whether a party is entitled to judgment on the pleadings, [the Court] accept[s] as true all material facts alleged in the non-moving party's pleading, and [] view[s] those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335. Where the movant is the defendant, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the nonmoving party. *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). However, where, as here, the plaintiff is the movant, "the fact allegations of *the answer* are to be taken as true, but those of the complaint are taken as true *only where and to the extent that they do not conflict with those of the answer.*" *Capitol Specialty Ins. Corp. v. W. View Apartments, Inc.*, 2021 WL 6101663, at *1 (11th Cir. Dec. 22, 2021) (quoting *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir. 1949)).

"If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* Thus, a judgment on the pleadings is appropriate "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.*; *see Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (holding that judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.").

Generally, the Court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). And the Court may consider an extrinsic document if it is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citation omitted). "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). As such, the Court may consider the policy and the underlying complaint, which are attached as exhibits to Penn-America's Complaint and central to its claims.

Finally, the Court must briefly address the Pier Defendants'—who are represented by counsel—failure to respond to the Motion. In the context of motions to dismiss, a district court may not grant a motion "solely on the plaintiffs' failure to respond in opposition."

3

*Giummo v. Olsen*, 701 F. App'x 922, 924–25 (11th Cir. 2017) (per curiam); *see Woodham v. Am. Cystoscope Co of Pelham*, 335 F.2d 551, 556 (5th Cir. 1964)[3] (holding that dismissal without consideration of the merits of a motion to dismiss under local rule requiring response within ten days of the filing of a motion was unwarranted); *see also Fields v. Checkr Grp. Inc.*, No. 1:24-CV-2122, 2025 WL 2270151, at *1 (N.D. Ga. May 29, 2025), *report and recommendation adopted*, 2025 WL 2270148 (N.D. Ga. June 20, 2025) ("[T]he Court does not rubber-stamp a requested dismissal and instead determines independently whether there is a sound legal basis for dismissal or the entry of summary judgment."). "When a motion to dismiss is granted as unopposed, the actual grounds for dismissal are the grounds chiefly asserted in said motion to dismiss. Accordingly, Plaintiffs' decision not to proffer argument or authority in response to the Motion[ ] is at their peril." *Wells v. State Farm Fire & Cas. Co.*, No. 7:24-CV-117, 2025 WL 2484022, at *2 (M.D. Ga. Aug. 28, 2025) (alterations adopted) (internal citations and quotation marks omitted). The same is true of unopposed motions for judgment on the pleadings. So although the Court must consider Penn-America's Motion on the merits to determine whether it is entitled to judgment as a matter of law, the Court does not, and may not, serve in the role of the Pier Defendants' counsel.

## III.    DISCUSSION

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Am. Fam. Life Assurance Co. of Columbus v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In Georgia, an insurance policy is governed by the law where the policy was delivered. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1271 (11th Cir. 2014) (citation omitted). Under Georgia law, "[a]n insurer's duty to defend is determined by 'comparing the allegations of the [underlying] complaint with the provisions of the policy.'" *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 941 (11th Cir. 2023) (quoting *Pilz v. Monticello Ins. Co.*, 599 S.E.2d 220, 221 (Ga. Ct. App. 2004)). If the allegations of the underlying complaint unambiguously exclude coverage, then the insurer is excused from its duty to defend. *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) (citation omitted). "However, if the underlying complaint sets forth any

---

[3] Decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

claim that 'even arguably' falls within the policy's coverage, then the insurer has a duty to defend the suit in its entirety, regardless of the ultimate liability of the insured." *Nationwide Prop. & Cas. Ins. Co. v. Hampton Ct.*, L.P., 754 F. Supp. 3d 1349, 1353 (N.D. Ga. 2024) (quoting *Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413, 418 (Ga. 2012)).

To interpret the policy at issue here, the Court must look to contract law. *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 746 S.E.2d 587, 590 (Ga. 2013) (citing *Hunnicutt v. S. Farm Bureau Life Ins. Co.*, 351 S.E.2d 638, 641 (Ga. 1987)). If the terms of the insurance contract are plain and unambiguous, the Court must "simply [ ] apply [them] as written, regardless of whether doing so benefits the carrier or the insured." *Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90, 92 (Ga. 2008) (citations omitted). This rule also applies to policy exclusions, which "must be given effect" when unambiguous, "even if 'beneficial to the insurer and detrimental to the insured.'" *Winder*, 73 F.4th at 941 (quoting *Fid. Nat'l Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 619 S.E.2d 704, 706 (Ga. Ct. App. 2005)). If the terms of the insurance contract are ambiguous, however, the Court must construe it "strictly against the insurer/drafter and in favor of the insured." *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 784 S.E.2d 422, 425 (Ga. 2016).

Under the Pier Defendants' policy, the Commercial General Liability Coverage Form grants coverage for sums "that the insured becomes legally obligated to pay as damages because of 'bodily injury'" to which the insurance applies. (Doc. 1-5 at 32). Among other criteria, the insurance applies to "bodily injury" that was "caused by an 'occurrence'" during the policy period. (Doc. 1-5 at 32, 44). The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 1 ¶ 19); (Doc. 1-5 at 44). An "occurrence," is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1 ¶ 20); (Doc. 1-5 at 44). In any suit seeking damages for a covered injury, Penn-America has a "duty to defend the insured." (Doc. 1-5 at 32).

In support of the instant Motion, Penn-America argues that the injuries alleged in the underlying complaint are not covered by the policy and thus do not invoke its duty to defend. Penn-America seeks a declaration in Count II, III, and IV of its Complaint that certain policy exclusions bar coverage for the bodily injury claims alleged in the Underlying Plaintiffs' complaint. The Court addresses each policy exclusion in turn.

### A.  Employer's Liability Exclusion (Count II)

Penn-America's Complaint seeks a declaration that it does not owe coverage due to the "Employer's Liability" exclusion. (Doc. 1 ¶ 32–36). This exclusion bars coverage for bodily injury to the insured's employee "arising out of and in the course of: (a) [e]mployment by the insured; or (b) [p]erforming duties related to the conduct of the insured's business[.]" (Doc. 1 ¶ 21); (Doc. 1-5 at 33). The policy defines the term "employee" to include a "leased worker" but explicitly excludes temporary workers from the definition. (Doc. 1-5 at 44). Penn-America does not argue the applicability of this exclusion in the instant Motion. And the Court is not convinced that it would apply, given the underlying complaint's repeated characterization of Brianna Long as an "independent contractor" for The Pier Bar. (Doc. 1-4 ¶¶ 7, 15). The underlying complaint does not contain sufficient factual allegations from which the Court could determine whether Long qualifies as an employee under the policy's definition. In any event, the Court need not decide the issue because, as discussed below, the Court finds that the other policy exclusions Penn-America relies upon apply to the Underlying Plaintiffs' claims, and therefore, serve as independent bases for granting Penn-America's Motion.

### B.  Assault or Battery Exclusion (Count III)

The second provision is an endorsement titled "Assault or Battery Exclusion—Designated Premises." In construing the policy exclusion, the Court begins  with the text of the exclusion itself. *See Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90, 92 (Ga. 2008). The Assault or Battery exclusion modifies the policy by barring coverage for any claims or suits for bodily injury "arising out of an 'assault,' or 'battery' that occurs in, on, near or away from [The Pier Bar's premises.]" (Doc. 1 ¶ 22); (Doc. 1-5 at 50). The exclusion applies to assaults or batteries,

1.  Caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's "employee", . . . in, on, near or away from [The Pier Bar's premises]; or

2.  Caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition; or

3.  Caused by or arising out of an insured's act or omission in connection with the prevention, suppression, or failure to warn of the "assault" or "battery", including but not limited to, negligent hiring, training or supervision.

4.  Caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons or other persons.

(Doc. 1 ¶ 22); (Doc. 1-5 at 50). The policy defines assault as "any intentional act, or attempted act or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of injury, including but not limited to physical injury, intimidation, verbal abuse, and any threatened harmful or offensive contact between two (2) or more persons." (Doc. 1 ¶ 22); (Doc. 1-5 at 50). The policy defines battery as "the intentional or reckless use of force, including a physical altercation or dispute between persons, or offensive touching against another, resulting in injury, whether or not the actual injury inflicted is intended or expected. The use of force includes, but is not limited to the use of a weapon." (Doc. 1 ¶ 22); (Doc. 1-5 at 50).

At the outset, the Court finds no ambiguity in the terms of the exclusion and therefore applies it to the facts of the underlying complaint according to the plain meaning of its terms. *See Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 466 S.E.2d 4, 6 (Ga. 1996) ("As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect[.]"). To start, the Court finds that the injury suffered by Brianna Long qualifies as a battery under the policy's definition because her death was caused by an intentional or reckless use of force, specifically the use of a firearm, even though the actual injury to Long may not have been intended by the person who fired the weapon on the night of the incident. Now the Court must determine whether the battery of Long falls within the policy exclusion. In support of its contention that the Assault or Battery exclusion applies, Penn-America makes two primary arguments. First, it argues that the exclusion bars coverage for claims of injuries caused by the Pier Defendants' negligence. (Doc. 14 at 8). Second, Penn-America argues that the Underlying Plaintiffs' claim arises from the Assault or Battery exclusion because "but for" the excluded conduct there would be no claim. (*Id.*) The Court addresses each argument in turn.

As to Penn-America's first argument, the plain language of the policy exclusion states that Penn-America is not obligated to provide coverage for an assault or battery "[c]aused by or arising out of [the Pier Defendants'] failure to properly supervise or keep [the] premises in a safe condition," or "[c]aused by or arising out of negligent, reckless, or wanton conduct" by the Pier Defendants. (Doc. 1 ¶ 22); (Doc. 1-5 at 50). These are the exact theories of liability alleged in the Underlying Plaintiffs' complaint. Indeed, the underlying complaint alleges that

7

the Pier Defendants owed Brianna Long a duty to keep the premises safe, that they breached that duty by failing to exercise ordinary care in keeping the premises safe, and this "negligent conduct" was a direct and proximate cause of her death. (Doc. 1-4 ¶¶ 15–18). By its clear terms, the Assault or Battery exclusion applies to any claim or suit for bodily injury arising out of assaults or batteries caused by the Pier Defendants' negligence. And the underlying complaint's allegations—that the Pier Defendants' negligence in keeping the premises safe caused Long's death—unambiguously exclude the incident from coverage.

As to Penn-America's second argument, the Georgia Court of Appeals defines "arising out of" to mean "had its origins in," "grew out of," or "flowed from." *BBL–McCarthy, LLC v. Baldwin Paving Co.*, 646 S.E.2d 682, 686 (Ga. Ct. App. 2007). The term "does not mean proximate cause in the strict legal sense . . . . Almost any causal connection or relationship will do." *Id.* (citations omitted). In determining whether claims "arise out of" excluded conduct, Georgia courts conduct a "but for" analysis. *Georgia Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 788 S.E.2d 74, 77 (Ga. Ct. App. 2016); *see Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 722 S.E.2d 923, 927 (Ga. Ct. App. 2012) ("When the phrase 'arising out of' is found in an exclusionary clause of an insurance policy, we apply the 'but for' test traditionally used to determine cause-in-fact for tort liability."). "Claims arise out of excluded conduct when 'but for' that conduct, there could be no claim against the insured." *Video Warehouse, Inc. v. Southern Trust Ins. Co.*, 678 S.E.2d 484, 488 (Ga. Ct. App. 2009).

Here, as noted above, the injury to Long falls within the policy's definition of battery. The Underlying Plaintiffs' claim against the Pier Defendants "arose out of" the Assault or Battery exclusion because but for the excluded conduct (the battery that caused Long's injuries and death), there could be no claim against the Pier Defendants. It matters not that the underlying complaint asserts claims of negligence against the Pier Defendants because Georgia courts have repeatedly held that "coverage need not be provided even though negligence was asserted as a concurrent cause of the harm suffered . . ., because that harm clearly arose out of conduct that was within the scope of an insurance policy exclusionary clause." *H.S.I. Fin. Servs., Inc.*, 466 S.E.2d at 7; *see Dynamic Cleaning Serv., Inc. v. First Fin. Ins. Co.,* 430 S.E.2d 33, 34 (Ga. Ct. App. 1993) (holding that an assault and battery exclusion applied where the insured's employee was "negligent in creating the circumstances which allowed the assault to occur,

8

[because] the injuries which gave rise to the cause of action arose out of and were clearly based on the assault and battery").

In sum, the Court finds, as a matter of law, that the policy language in the Assault or Battery exclusion is unambiguous. Applying its terms to the facts of the underlying complaint, the Court finds that the negligence claims against the Pier Defendants fall within the scope of the Assault or Battery exclusion. As such, this exclusion relieves Penn-America of its duty to defend the suit.

### C. Firearm Exclusion (Count IV)

The third provision is an endorsement, titled "Exclusion–Any Firearm or Other Weapon," which further modifies the policy by barring coverage for claims or suits for bodily injury "arising out of the use, sale, or demonstration of any firearm or other weapon by any person." (Doc. 1 ¶ 23); (Doc. 1-5 at 76). The exclusion applies to conditions similar to those set forth in the Assault and Battery Exclusion, excluding coverage for bodily injury caused:

    a.  By, at the instigation of, or with the direct or indirect involvement of [the insured] or [the insured's] "employees", patrons or other persons in, on, near or away from [The Pier Bar's premises];

    b.  By or arising out of [the insured's] failure to properly supervise or keep [the] premises in a safe condition;

    c.  By or arising out of any insured's act or omission in connection with the prevention, suppression or failure to warn, including but not limited to negligent supervision, hiring, employment, training or monitoring of others; or

    d.  By or arising out of negligent, reckless or wanton conduct by [the insured], [the insured's] "employees", patrons or other persons.

(Doc. 1 ¶ 23); (Doc. 1-5 at 76). Penn-America makes the same arguments with respect to the Firearm exclusion. (Doc. 14 at 8). Specifically, that the exclusion applies regardless of whether the bodily injury was caused by the Pier Defendants' failure to keep the premises safe and because the use of a firearm is the but for cause of the Underlying Plaintiffs' claim. (*Id.*)

The Court finds no ambiguity in the terms of this exclusion and therefore applies it to the facts of the underlying complaint according to the plain meaning of its terms. *H.S.I. Fin. Servs., Inc.*, 466 S.E.2d at 6. The plain language of the exclusion bars coverage for bodily injury arising out of the use of a firearm by any person and caused by the Pier Defendants' negligence in failing to properly supervise or keep the premises in a safe condition or failing to warn. The

underlying complaint alleges that the Pier Defendants had actual and/or constructive knowledge of criminal activity around The Pier Bar's premises and yet failed to keep the premises safe, and that this negligence ultimately resulted in Long being shot, with a gun, in the parking lot. (Doc. 1-4 ¶¶ 10–12, 17). By its clear terms, the Firearm exclusion applies to any claim or suit for bodily injury resulting from the use of a firearm regardless of whether the use of the firearm was caused by the Pier Defendants' negligence. And the underlying complaint's allegations—that the Pier Defendants' negligence in keeping the premises safe and failing to warn caused Long's death—unambiguously exclude the incident from coverage.

Further, the Underlying Plaintiffs' claim against the Pier Defendants "arose out of" the Firearm exclusion because but for the excluded conduct (the use of a firearm), there could be no claim against the Pier Defendants. In sum, the Court finds, as a matter of law, that the policy language in the Firearm exclusion is unambiguous. Thus, the Court finds that this exclusion also applies to the claims asserted in the underlying complaint and serves as a second, independent basis to relieve Penn-America of its duty to defend.

## CONCLUSION

In sum, the Court finds that the Assault or Battery and Firearm exclusions apply to the claims asserted by the Underlying Plaintiffs and thus bar coverage under the terms of the policy issued by Penn-America to the Pier Defendants. As a result, Penn-America does not owe coverage to the Pier Defendants, including a duty to defend, for the claims asserted in the underlying lawsuit. Accordingly, Penn-America's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**.

**SO ORDERED**, this 22nd day of April 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**